YARRUT, Judge.
Defendant in the main demand, and likewise Defendant in reconvention in the third-party action instituted by it, appeals from the judgment in favor of Plaintiff in the main demand, and from the judgment in favor of reconvenor in the third-party action.
This suit was brought by King & Company, Inc. (referred to as King), a subcontractor, against Gurtler, Plebert & Co., Inc. (referred to as Gurtler), a general contractor, to recover the sum of $724.87 for extra work performed in the course of an extensive remodeling job. Gurtler denied liability to King and, in turn, filed a third-party action against A. J. Toups Co., Inc. (referred to as Toups), a painting subcontractor, to recover over against Toups any judgment rendered against Gurtler, contending that King’s extra work, if allowed, was caused by Toups’ improper and defective painting.
Gurtler retained from Toups’ contract price the amount of King’s claim for the extras ($724.87), and Toups reconvened against Gurtler to recover this sum. The trial judge, without written reasons, rendered two judgments against Gurtler, one in favor of King on the main demand, and the other in favor of Toups, reconvenor in the third-party action, each in the sum of $724.87, plus interest and costs.
All difficulty revolves around the work performed on the ceiling of a directors’ room in a building Gurtler, as general contractor, undertook to remodel extensively for a local building and loan association. Gurtler, in turn, entered into a subcontract with King to furnish labor and materials for the installation of the acoustical tile ceiling. Gurtler also subcontracted with Toups to provide material and labor for all painting required. The general contract did not require the painting of this ceiling. However, after King installed the ceiling, the owner requested the job architect to determine the cost of painting the ceiling. Thereupon Toups was instructed to paint the ceiling as an extra.
After the ceiling painting was completed, the architect rejected the work. King reinstalled a new ceiling with new tile, and Toups, in turn, painted the ceiling again. After the second painting the ceiling was again rejected for the same reason, that is, the joints between the tiles were open in some places and closed in others and the alignment of the tile had been changed, creating a general unacceptable appearance. King again re-installed new tile in the ceiling, which was left unpainted.
King and Toups each blame the other for the defects in the ceiling. The record seems clear that Gurtler was in no manner responsible therefor. When Gurtler received King’s bill for extra work, it withheld the amount from Toups’ subcontract to await determination of which was responsible, depositing the amount in court when this suit was instituted.
The job architect testified that the installation of the ceiling was properly performed but, after Toups had finished painting it on the first occasion, the ceiling was unacceptable because the joints in the tiles were opened in some places, closed in others and the alignment had been changed, charging that the painters had disturbed the ceiling, a suspended one, and caused it to be “moved around,” by improperly applying the paint with a roller. The roller pressure against the ceiling tiles he said caused the trouble.
The Vice-President of King testified that the ceiling was disturbed by the painters; that the paint on the edges of the tiles was very evident, and gave the appearance they were backed and distorted; that acous *494 tical tiles do not expand and contract. He agreed with the job architect that the paint was forced between the tile joints by pressure from beneath.
Toups’ estimator, who was in charge of this “extra” painting, stated that, after the painting had been completed, the ceiling looked the same to him and the joints were in the same condition as they were before the painting.
Toups’ superintendent testified that the joints in the ceiling were not tight and flush together prior to the painting; that the misalignment of the tile existed prior to the painting; that the ceiling was painted without the application of any substantial pressure to the tile.
Gurtler’s job superintendent testified that after the painting the ceiling was distorted, the tile joint openings were larger in some places than others; that the tiles were pushed out of place by the painting.
Gurtler took no part in the installation of the ceiling or the painting of it. Both Toups and King were Gurtler’s subcontractors and responsible to it for defective work under their subcontracts, or extras arising therefrom.
The testimony preponderates that this type of ceiling is susceptible of being painted, and the type of paint used, though specified by the architect, in no manner was responsible for the defective work. Mr. Toups was reluctant to do the extra painting but only because he feared his painter might drip paint and mar the paneled walls of the board room, not because it could not be done.
The evidence makes it clear that neither Gurtler nor King was responsible for the defective condition of the ceiling, but the responsibility therefor rests upon the lack of care and skill of Toups’ painter.
For the reasons assigned, the judgment of the lower court is reversed; and it is now ordered, adjudged and decreed that there be judgment in favor of Plaintiff, King & Company, Inc., and against Defendant, Gurtler, Hebert & Co., Inc., in the full sum of $724.87, with legal interest from judicial demand until paid, and for all taxable costs of court; with like judgment in favor of Gurtler, Hebert & Co., Inc. and against A. J. Toups Co., Inc., third-party Defendant, subject to credit of $724.87, the amount deposited in the registry of the court, to be returned to Gurtler, Hebert & Co., Inc. The third-party reconventional demand of A. J. Toups Co., Inc. is dismissed.
Reversed and rendered.